UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                         Case No. 12-44593

JAMES LOUIS DEMETER,                           Chapter 7
and
GLORY LEE DEMETER,                             Judge Thomas J. Tucker

            Debtors.
_____/

## OPINION REGARDING TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS UNDER 11 U.S.C. § 522(d)(1)

In this case, the Chapter 7 Trustee has objected to the Debtors' claim of exemption in a home that the Debtors own at 5192 U.S. 23, Cheboygan, Michigan (the "Cheboygan Property"). The joint Debtors, James and Glory Demeter, each claim an exemption in the Cheboygan Property as a "residence," under 11 U.S.C. § 522(d)(1). The Trustee argues that this property does not qualify as property "that the debtor or a dependent of the debtor uses as a residence," within the meaning of § 522(d)(1), primarily because this property is not the Debtors' *principal* residence. The Court held an initial hearing, and then held an evidentiary hearing on July 9, 2012.

This case raises the question whether a bankruptcy debtor who owns two homes as of the petition date, and who has regularly lived in each home part of each year, may claim the "residence" exemption under § 522(d)(1) only in the home which is the debtor's *principal* residence; or whether instead, the debtor may claim the exemption in either home. For the reasons stated in this opinion, the Court holds that such a debtor may claim the "residence" exemption in either home. The Court will overrule the Trustee's objection, and allow Debtor's § 522(d)(1) exemptions.

## I. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.). This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O). This matter also is "core" because this matter is "created or determined by a statutory provision of title 11," namely, 11 U.S.C. § 522(d)(1). *See generally Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009).

## II. Background and facts

Based on the evidence presented at the evidentiary hearing, including the testimony of the Debtors, the Court finds the following facts.

The Debtors, James Demeter and Glory Demeter, are husband and wife, and they filed their joint Chapter 7 petition in this case on February 28, 2012. For many years before filing their petition, and continuing to the present, Debtors have owned two homes. The first is their home in the Detroit area, located at 14249 Greentrees, Riverview, Michigan (the "Riverview Property"). The Debtors' second home is the property at issue, the Cheboygan Property. Each property consists of a single-family home.

The Debtors purchased the Riverview Property in 1972, when the house was built. The Trustee presented substantial evidence which arguably shows that from 1972 through the petition date, and continuing thereafter, the Riverview Property has been the Debtors' *principal* residence. Among other facts tending to show this are that the Debtors have always used the Riverview Property, not the Cheboygan Property, as their only mailing address, and as their home address for many purposes, including voting, as the address on their tax returns, and as the

2

address for receiving all of their bills and bank statements. The Debtors were physically

occupying the Riverview Property on the petition date.

The Debtors have not claimed any exemption for the Riverview Property, and their

Schedules A and D indicate that the balance owing on the mortgage loan on the Riverview

Property substantially exceeds the value of that property.[1] The creditor holding the mortgage on

the Riverview Property moved for and has obtained, without objection, relief from the automatic

stay, to enable it to pursue foreclosure against the Riverview Property.[2]

With respect to the Cheboygan Property, the Debtors listed it in their Schedules as their

"Second Residence."[3] The Trustee asserts that this property is a vacation home. The property is

located in Northern Michigan, on Lake Huron, and faces toward Mackinac Island, Michigan.

The Debtors have owned the Cheboygan Property since 1996. As of the petition date, they had

listed that property for sale, for several months, and had received a couple of offers on the

property, but had found the offers inadequate and rejected them.

The Debtors' home in Cheboygan is a 3 bedroom house, is fully furnished, and at all

times has had all the basic utilities operating year-round. Debtors keep clothing there, along with

other personal property. Debtor James Demeter, whose testimony the Court credits, testified that

the Debtors have lived in the Cheboygan house for about half of the year for each year since that

they have owned it. Debtors considered the Riverview Property a "starter home," and lived in

---

[1]  *See* Schedules A and D, filed March 12, 2012 (Docket # 11).

[2]  *See* Order, filed July 12, 2012 (Docket # 73), granting the unopposed stay-relief motion filed on June 19, 2012 (Docket # 61).

[3]  *See* Schedules A and D (Docket # 11).

3

Riverview because of work. But the Debtors always considered the Cheboygan Property their home, and had planned to live there full-time ultimately, until recent financial problems prompted them to try to sell the home. James Demeter testified that in the past he had tried to purchase businesses in the Cheboygan area, so that he and his wife could live in the Cheboygan Property full time. Even while working in the Detroit area, James Demeter was able to do some of his work while staying at the Cheboygan Property. And the Debtors always lived in the Cheboygan home for about half of the time each year, and at all times of the year, including winter, and including winter holidays like Christmas and New Years Day. That home was never winterized, and the Debtors never rented it out.

The Court credits the following testimony from James Demeter's supplemental affidavit, dated June 1, 2012, which was admitted into evidence as Trustee's Exhibit 18:[4]

> 5. Since 1996, my wife and I have spent about half the year at the Cheboygan Property. This includes almost the entire summer, as well as weekends and holidays year round. In particular, my wife and I often resided at the Cheboygan Property for almost an entire month in and around the Christmas holidays, entertaining various friends and family during those times.
>
> 6. There were many instances where my wife continued to reside at the Cheboygan Property during the week, sometimes accompanied by my daughter or others, while I travelled back to the Riverview Property in order to work.

## III. Discussion

Section 522(d)(1) provides:

> (d) The following property may be exempted under subsection (b)(2) of this section:

---

[4] This supplemental affidavit also was filed, on June 4, 2012 (Docket # 52).

> (1) The debtor's aggregate interest, not to exceed $21,625 in value, **in real property** or personal property **that the debtor** or a dependent of the debtor **uses as a residence**, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

11 U.S.C. § 522(d)(1)(emphasis added).  The dispute in this case concerns the meaning of "residence" in this section.  The Bankruptcy Code does not define the word "residence."

### A. The Trustee's position

The Trustee argues that the undefined word "residence" as used in § 522(d)(1) is ambiguous.  And, relying on *Butner v. United States*, 440 U.S. 48, 55 (1979), the Trustee argues that the Court must look to the law of the state of Michigan to determine whether the Cheboygan property is a "residence."[5]  But, the Trustee says, "residence" is not a defined property interest under Michigan law.  For these reasons, the Trustee argues that the Court should resort to legislative history to determine Congress's intended meaning of the word "residence."

The Trustee argues that the legislative history shows that Congress intended a residence under § 522(d)(1) to be the equivalent of a "homestead" under state exemption law.[6]  Michigan's exemption statutes do not use the word "residence," but they provide an exemption for a debtor's "homestead."  The Trustee argues that under Michigan's statutory exemption for debtors in bankruptcy,[7] just as under the exemption statutes of many other states, a "homestead" is a

---

[5]  "Trustee's Reply to Debtors' Brief in Response to Trustee's Objection to Debtors' Claims of Exemption" ("Trustee's Reply")(Docket # 42) at 2.

[6]  *Id.*  This legislative history is discussed in the *Brown* case, quoted in part III-C-2, later in this opinion.

[7]  Michigan has a statute that grants specified exemptions for debtors in bankruptcy, Mich. Comp. Laws Ann. § 600.5451, and has a different statute that grants specified exemptions to debtors generally.  *See* Mich. Comp. Laws Ann. § 600.6023 (which also grants an exemption in a debtor's

person's *principal* residence. *See* Mich. Comp. Laws Ann. §§ 600.5451(1)(n) and 600.5451(5)(d) (granting a debtor in bankruptcy a "homestead" exemption from property of the estate, among other exemptions, and defining "homestead" as one of several types of residential dwellings, "owned or being purchased under an executory contract by the debtor that the debtor or a dependent of the debtor occupies as his or her *principal* residence")(emphasis added). The Trustee points out that under Michigan law, a debtor can only have one homestead, citing *Kleinert v. Lefkowitz*, 259 N.W. 871, 874 (Mich. 1935)(citing *Wheeler v. Smith*, 28 N.W. 907 (Mich. 1886)("A person may not have two homesteads at the same time.")).[8]

The Trustee argues that as of the petition date, the Riverview Property was the Debtors' principal residence, and that the Cheboygan Property was only a seasonal and lesser-used vacation home. Therefore, according to the Trustee, Debtors cannot claim an exemption in the Cheboygan Property under § 522(d)(1).[9]

In the alternative, the Trustee argues that even if the Court does not rely on Michigan law to define "residence," the Cheboygan Property is not the debtor's residence "under the ordinary or natural meaning of the term 'residence' because the Debtors[] did not live at the Cheboygan [p]roperty on the petition date and had no intent to return [there]."[10]

---

"homestead," *see* § 600.6023(1)(h)). The United States Court of Appeals for the Sixth Circuit recently held that Michigan's bankruptcy-specific exemption statute is not unconstitutional, and does not violate either the Bankruptcy Clause or the Supremecy Clause of the United States Constitution. *See Richardson v. Schafer* (*In re Schafer*), No. 11-1340, 2012 WL 3553294 (6th Cir. August 20, 2012).

[8] Trustee's Reply at 3.

[9] *Id.* at 3-4.

[10] *Id.* at 4.

**B. Debtors' position**

Debtors argue that *both* the Riverview Property and the Cheboygan Property are their residences, and that they may claim an exemption in either property under § 522(d)(1). This is so, Debtors argue, because there is no requirement under § 522(d)(1) that a debtor have only one residence, or that the residence claimed as exempt be the debtor's *principal* residence.[11] Debtors argue further that even if § 522(d)(1) requires that the "residence" claimed as exempt must be the debtor's principal residence, the Cheboygan Property meets that requirement, because on the petition date, Debtors intended the Cheboygan Property to be their principal residence.[12]

**C. The Court's ruling**

**1. Some general principles**

The Trustee bears the burden of proving, by a preponderance of the evidence, that Debtors' exemptions in the Cheboygan Property under § 522(d)(1) "are not properly claimed." *See* Fed.R.Bankr.P. 4003(c); *see also In re John*, 459 B.R. 684, 689 (Bankr. E.D. Mich. 2011)(citations omitted). The Court must construe exemptions liberally, in favor of the Debtors. *See In re Hanh Hieu Dang*, No. 11-10091, 2012 WL 2175778, at *2 (Bankr. W.D. Mich. June 13, 2012)("Exemptions are to be liberally construed in favor of a debtor.") (citing *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 400 (B.A.P. 6th Cir.2010) and Fed. R. Bankr.P. 4003(c)).

---

[11] "Debtors' Brief in Response to Trustee's Objections to Debtors' Claims of Exemption" (Docket # 38) at 2-3.

[12] *Id.* at 4.

The Court must determine Debtors' claimed exemptions as of the date they filed their bankruptcy petition. *See id.* ("Exemptions are determined as of the filing date."); *In re Buick*, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) and cases cited therein (holding that a debtor's entitlement to an exemption under § 522(d)(1) is "determined as of the filing date of . . . [a bankruptcy] petition").

### 2. The meaning of "residence" in § 522(d)(1)

The primary issue to be decided is whether, as the Trustee contends, a debtor who owns and uses more than one home may only claim a "residence" exemption under § 522(d)(1) for the home that is his or her *principal* residence. The Court must reject the Trustee's argument.

If the word "residence" in § 522(d)(1) is unambiguous, the Court must give that word its plain meaning, unless doing so would lead to an absurd result or would be demonstrably contrary to Congressional intent. *See Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004) (citation omitted) ("It is well established that ''when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.''); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)(citations omitted)("where . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'" and "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"); *see also Kuehner v. Irving Trust Co.*, 299 U.S. 445, 449 (1937)("The legislative history of this provision . . . cannot affect its interpretation, since the language of the act as adopted is clear.")

The Court agrees with Debtors that they may claim an exemption in the Cheboygan Property, even if it was not their *principal* place of residence on the petition date. This is so because "residence" as used in § 522(d)(1), unambiguously, is not limited to a "principal residence," and a debtor can have more than one "residence." And the evidence, and the facts found by the Court in part II of this opinion, establish that the Cheboygan Property was one of the Debtors' two residences as of the petition date, under the plain meaning of the word "residence."[13]

As noted above, the word "residence" is not defined anywhere in the Bankruptcy Code. One might argue that the word "residence" in § 522(d)(1) is ambiguous, as least in some respects. But with respect to the primary issue *in this case,* the word is not ambiguous. As to that issue, any ambiguity that arguably might otherwise have existed is eliminated, by the fact that Congress has used the phrases "principal residence" and "primary residence" in many *other* sections of the Bankruptcy Code, but not in § 522(d)(1), which uses only the unmodified word "residence." Congress has explicitly, and repeatedly, drawn a distinction between "residence" on the one hand, and "principal residence" and "primary residence" on the other hand. This makes clear that "residence" is not limited to a debtor's *principal* residence, and that a debtor may have

---

[13] As noted in part III-A of this opinion, the Trustee's additional arguments are that the Cheboygan Property was not a residence as of the bankruptcy petition date because "the Debtors[] did not live at the Cheboygan [p]roperty on the petition date and had no intent to return [there]." These arguments fail. First, the Court finds that the Debtors *did* live at the Cheboygan Property as of the petition date, even though as between their two homes, they were physically present at their Riverview Property when the petition was filed. Second, the Trustee failed to prove his assertion that the Debtors "had no intent to return" to the Cheboygan Property as of the petition date. The Trustee had the burden to prove this assertion by a preponderance of the evidence, and failed to do so. The mere fact that Debtors had the Cheboygan Property listed for sale as of the petition date does not prove that they had no intent of returning to and occupying that property, at least until it was sold. And as of the petition date, Debtors had no buyer for the property.

more than one "residence" for purposes of § 522(d)(1).  *Compare* 11 U.S.C. §§ 101(13A);

101(18)(A); 101(18)(B)(ii); 101(19A)(A)(i); 101(19A)(B)(ii)(II); 101(27B)(A); 522(p)(2);

524(j)(1); 1123(b)(5); 1322(b)(2); 1322(c)(1) and 1322(c)(2)(all using "principal residence"),

*and* § 707(b)(2)(A)(iii)(II) (using "primary residence"), *with* 11 U.S.C. §§ 522(d)(1); 522(o)(1);

522(o)(2); 522(p)(1)(A); and 522(p)(1)(B)(all using "residence" alone).  The use of the word

"residence" in § 522(d)(1), without the limiting modifier "principal" or "primary," shows a

Congressional intent to enable debtors to claim an exemption in a broader category of property

than just a debtor's *principal* residence.[14]

      This conclusion is reinforced by the rule of statutory construction that requires that if

possible, every word used in a statute must be given meaning and effect.  As the Supreme Court

explained in *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879):

> It is a cardinal rule of statutory construction that significance and
> effect shall, if possible, be accorded to every word. As early as in
> Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon
> the whole, to be so construed that, if it can be prevented, no clause,
> sentence, or word shall be superfluous, void, or insignificant.' This
> rule has been repeated innumerable times. Another rule equally
> recognized is that every part of a statute must be construed in
> connection with the whole, so as to make all the parts harmonize, if
> possible, and give meaning to each.

If Congress intended "residence" to mean "principal residence," in § 522(d)(1) and other sections

of the Bankruptcy Code, then the words "principal" and "primary" modifying "residence" in

many other sections of the Code would be superfluous.  Considering the Bankruptcy Code as a

---

[14]  In addition, the Court notes that Congress has used the word "homestead" twice in the
Bankruptcy Code, in 11 U.S.C. §§ 522(o)(4) and 522(p)(1)(D).  These two subsections of 11 U.S.C.
§ 522 were added to the Bankruptcy Code by the 2005 amendments, but this is further evidence that
when Congress intends to employ state law "homestead" concepts in the Bankruptcy Code, it does so
explicitly.

whole, the Court must give "residence" a broader meaning than "principal residence" or "primary residence." In this way, the Court follows the Supreme Court's command in *Washington Mkt. Co. v. Hoffman*, quoted above, that "every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each."

The case of *In re Lawrence*, 469 B.R. 140, 142 (Bankr. D. Mass. 2012)(footnote omitted), supports the Court's conclusion in this case about the meaning of "residence:"

> While the Bankruptcy Code does not define "residence," the term is not ambiguous. According to *Black's Law Dictionary* a residence is "the place where one actually lives," and elaborates that a person thus may have "more than one residence at a time." BLACK'S LAW DICTIONARY 1423 (9th ed. 2009). That a person can have multiple residences is proven not merely by reading the obituaries but by the existence of the ubiquitous construct "principal residence."

The meaning of the word "residence" under § 522(d)(1) was at issue in *Lawrence*, because the chapter 13 trustee had objected to the debtors' § 522(d)(1) claims of exemption in one of two properties they owned on the petition date, arguing that it was not the debtors' "residence." The trustee argued that such property was only "a vacation home used by the debtors seasonally and sporadically." *Id.* at 141. "The parties appear[ed] to have chosen to do battle over which of the two properties was the debtors' principal residence on the bankruptcy petition date." *Id.* But the court stated that it was unnecessary for it to make any finding on this point:

> Had this been a dispute over the application of the Massachusetts homestead exemption statute, which expressly applies to a person's "principal residence," it would be necessary to delve into the fact-finding suggested by the parties. But it is the federal exemption that is now being asserted and that exemption is not limited to a principal residence.
>
> . . .

11

> We "must presume that [the] legislature says in a statute
> what it means and means in a statute what it says there." *Dodd v.*
> *United States*, 545 U.S. 353, 357, 125 S.Ct. 2478, 162 L.Ed.2d 343
> (2005) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54,
> 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). By choosing not to limit
> the residence qualified for exemption under § 522(d) to a principal
> or primary residence, Congress presumably intended to encompass
> a broader category than principal residences, namely any residence.

*Id.* at 141-42. The court concluded that Congress had been "deliberate in its terminology" based,

in part, on the fact that in various provisions of the Bankruptcy Code only "residence" is used,

while in other provisions of the Bankruptcy Code "principal residence" or "primary residence" is

used. *Id.* at 142 (contrasting Code §§ 101(13A), 1123(b)(5), 1322(b)(2), 522(p)(2) (in which

"principal residence" is used), with Code §§ 522(d)(1) and (p)(1) (in which only "residence" is

used)). The *Lawrence* court held that under the plain meaning of the word "residence," "on the

date of their bankruptcy petition, the [debtors] owned two residences" which they used, and so

"[t]hey were entitled to exempt either one[.]" *Id.* at 142.

Thus, § 522(d)(1) permits a debtor to exempt a residence that is not the debtor's *principal*

residence. And this interpretation is consistent with the requirement that bankruptcy courts must

construe exemptions liberally in favor of the debtor. Limiting the "residence" exemption to a

debtor's *principal* residence would be an unduly narrow and strict construction of § 522(d)(1),

and would add a requirement ("principal") that Congress did not put there.

In following this approach, the Court respectfully disagrees with the contrary line of cases

cited by the Trustee, that limit a "residence" under § 522(d)(1) to what is a "homestead" under

state law. An example of such a case is *In re Brown*, 299 B.R. 425 (Bankr. N.D. Tex. 2003).

In *Brow*n, the debtors sought "to exempt [under § 522(d)(1)] their interest in a timeshare located in Orlando Florida," which was not their primary residence. *Id.* at 426. The Chapter 13 trustee objected to the exemption in the timeshare. *Id.* The *Brown* court looked to the legislative history of § 522(d)(1) to determine Congress's intent in using this term, after concluding that "[o]utside of the Bankruptcy Code, the term ["residence"] has a plethora of meanings." *Id.* at 427-28. Based on the legislative history, the court concluded that Congress intended "residence" to have the same meaning as the state law concept of "homestead." The court stated:

> In examining the legislative history, it is clear that Congress intended § 522(d)(1) to provide debtors with a homestead exemption. *See, In re Marsico*, 278 B.R. 1, 5 (Bankr.D.N.H.2002)(quoting *In re Tomko*, 87 B.R. 372, 374 (Bankr.E.D.Pa.1988)). The court in *Tomko* noted that House Report 95–595, in describing the exemptions contained in § 522, stated, "First is a homestead ... which may be claimed in real or personal property that the debtor or a dependent of the debtor uses as a residence." *Tomko*, 87 B.R. at 374 (quoting H.R.Rep. No. 95–595, at 361 (1977), *reprinted in* 1978 U.S.C.C.A.N., 5787, 6317). The court concluded that "the purpose of subsection 522(d)(1) was to provide those debtors eligible to select the federal exemptions with a homestead exemption, and that the term 'residence' must be interpreted in this light." *Id*. Effectively, for purposes of § 522(d)(1), the terms "residence" and "homestead" are equivalent and interchangeable. *See, In re Anderson*, 240 B.R. 254, 256 (Bankr.W.D.Tex.1999).

*Id.* at 428. The court reasoned that "[a] homestead, as a property interest, is defined by state law" *Id*. (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993) (quoting *Butner v. U.S.*, 440 U.S. 48, 54–55 (1979)), and *In re Universal Seismic Assocs.*, 288 F.3d 205, 208 (5th Cir.2002)). For this reason, the *Brown* court looked to the state law of Florida where the property was located to determine the meaning of homestead. The court concluded that the timeshare was not a homestead under Florida law, because the debtors did not use and occupy it with the actual intent

13

to live there permanently, which was required under Florida law to establish a homestead, and therefore the debtors could not claim an exemption under § 522(d)(1).  *Id.*

Other cases, which, like *Brown*, hold that the terms "residence" under § 522(d)(1) and "homestead" are interchangeable, and which look to state law to define "homestead" to determine whether debtors can claim a "residence" exemption under § 522(d)(1), include:  *In re Rivera*, 470 B.R. 109, 117  (Bankr. D.P.R. 2012)(concluding that under the law of Puerto Rico, where the property claimed as exempt under § 522(d)(1) was located, a homestead must be a debtor's principal residence); *In re Kaplan,* 468 B.R. 246, (Bankr. W.D. Ky. 2012)(concluding that under Kentucky law, "a homestead is established by actual intention to live permanently in a place, coupled with an actual use and occupancy"); *In re Buick*, 237 B.R. 607 (W.D. Pa. 1999)(citations omitted)(stating, regarding the debtor's claim of exemption under § 522(d)(1), that "[b]ecause the Bankruptcy Code does not define 'homestead' either, it is appropriate, indeed it is necessary, for this Court to turn to relevant state law in order to fill in the gaps regarding a debtor's exemption of a homestead" and "[s]urveying the law of states [other than Pennsylvania where the property at issue was located] regarding homestead exemptions" because "Pennsylvania does not provide for a homestead exemption").

The Court disagrees with the approach followed by these cases for the reasons discussed earlier in this opinion, and in the *Lawrence* case, discussed above.  In addition, these cases erroneously relied on the legislative history of § 522(d)(1) to determine that "residence," means the same thing as "homestead" in all respects, rather than giving "residence" its ordinary meaning.  "Homestead," and "residence" do not mean the same thing.  The plain meaning of

14

"residence" is "the place, esp. the house in which a person lives or resides;[15] dwelling place; home." *The Random House College Dictionary* 1123  (rev. ed. 1980).   "Residence" is a word that is regularly used in common parlance.  "Homestead," on the other hand, is a technical legal term created and often defined by statute.  A "homestead" is a dwelling with its land and buildings, **protected by a homestead law.**"  *Id.* at 633 (emphasis added).   It is contrary to the rules of statutory construction to use legislative history of § 522(d)(1) to, in essence, replace the word "residence," which was the actual word used by Congress in § 522(d)(1), with the word "homestead."  "[L]egislative history cannot override the legislative intent expressed in the clear words of the statute."  *In re Karben*, 201 B.R. 681, 683 (Bankr. S.D.N.Y. 1996). As explained in *Karben*:

> "The mere fact that the statutory language extends the effect of the statute beyond the primary goal enunciated by Congress [in the legislative history] is not a valid reason not to give the statutory language full effect". *Education Resources Institute, Inc. v. Hammarstrom* (*In re Hammarstrom*), 95 B.R. 160, 164 (Bankr.N.D.Cal.1989). The Court should not assume the role of the legislature by deviating from the words of the statute and creating new law. The Supreme Court warned against this form of judicial activism in *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156, 175 (1930). The courts have stated clearly the necessary element for allowing judges to deviate from a statute's plain meaning. *See In re Hammarstrom*, 95 B.R. at 162 ("A court may not decline to follow the plain meaning of the statute merely because such language goes beyond Congress' primary stated goal in enacting that statute"). "To give statutory language other than its plain meaning, a court must find that a literal meaning of the

---

[15]  "Reside" means "to dwell permanently or for a considerable time." *The Random House College Dictionary* 1123.  Arguably, then, a person could be said not to *reside* at a vacation house that is only used occasionally for a limited amount of time.  The Court need not decide this issue, however, because the Court has found from the evidence presented in this case that Debtors used the Cheboygan property for a considerable amount of time — about half of the time each year — and thus resided there.

15

> statute would actively frustrate the purpose of Congress as revealed
> in unambiguous legislative history". *Id.* at 162–63.

201 B.R. at 683-84.

The Supreme Court, in *Hart v. United States*, 585 F.2d 1025 (1978), likewise warned

against using legislative history to deviate from the plain meaning of the language:

> Assuming without deciding that unambiguous statutory language,
> not producing absurd results is not enough to bar resort to
> contradictory legislative history absolutely, it does indicate extreme
> caution. Congress may be presumed not unskilled in the use of
> words and highly likely to have enacted what it intended. It is
> foolish to abandon this presumption where the legislative history is
> perceivably full of pitfalls that cannot readily be avoided. Some
> pitfalls are invisible to the judicial eye, but the most myopic can
> see one in a committee report that contradicts the plain language of
> a statute in guise of interpreting it, or makes manifestly incorrect
> statements about it or what it does.

*Id.* at 1035; *see also In re Rossman*, 70 B.R. 985, 992 (Bankr. W.D. Mich.1987)(citation

omitted)("[t]he legislative history of a statute may not compel a construction at variance with its

plain words, and where the language of a statute is unambiguous, consideration of the history of

the legislation is not permissible.")

A further problem with the *Brown* line of cases is that they rely on the general rule in

bankruptcy that property interests are to be determined under state law, without discussing

whether the "federal interest" exception to this rule applies.  In *Butner*, the Supreme Court stated:

"Property interests are created and defined by state law.  **Unless some federal interest requires**

**a different result**, there is no reason why such interests should be analyzed differently simply

because an interested party is involved in a bankruptcy proceeding."  440 U.S. at 55 (emphasis

added).  In *In re Anderson*, 240 U.S. 254, 257  (Bankr. W.D. Tex. 1999), the court raised the

issue of "[w]hether § 522(d)(1) manifests such an overriding federal interest," but did not decide the issue. This Court, in considering this issue, concludes that the "federal interest" exception does apply to § 522(d)(1).

Under the Bankruptcy Code, there is an overriding federal interest in providing Debtors with "a fresh start." *See*, *e.g.*, *In re W.R. Grace & Co.*, No. 11-199, 2012 WL 2130981, at *72 (D. Del. June 11, 2012)(listing a "fresh start" for a debtor as one of the important countervailing federal interests that could override state contract law); *In re Buckley*, 404 B.R. 877, 887 (Bankr. S.D. Ohio 2009)(citations and internal quotation marks omitted)(stating that "the overriding goal of the Bankruptcy Code [is] to provide a "fresh start" for the debtor"); *In re Spears*, 308 B.R. 793, 825 (Bankr. W.D. Mich. 2004), *rev'd on other grounds*, 313 B.R. 212 (W.D. Mich. 2004)("Providing an individual debtor with a "fresh start" is a fundamental objective of the Bankruptcy Code."). By providing debtors with the right to exempt certain property from the claims of creditors so that debtors have basic necessities to begin again, the exemption scheme under § 522(d) is crucial to, and an integral part of a debtor's "fresh start." *Schwab v. Reilly*, 130 S. Ct. 2652, 2667 (2010)( "We agree that 'exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a "fresh start."); *Spears*, 308 B.R. at 825 ("Congress enacted the exemption scheme set forth in Section 522 in order to provide an individual debtor with the fresh start it contemplated."); 4 *Collier on Bankruptcy* ¶ 522.01[5], at 522-14 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012)("A fundamental component of an individual debtor's fresh start in bankruptcy is the debtor's ability to set aside certain property as exempt from the claims of creditors.").

Here the "federal interest" exception applies, so *Butner* does not require courts to interpret the meaning of "residence" solely by reference to state law. As discussed above, while state law generally limits "homestead" to a debtor's one principal residence, Congress has chosen not to limit the "residence" exemption in § 522(d)(1) to a debtor's "principal residence." Thus, there is a federal interest in not limiting the federal exemption in a debtor's home to his "principal residence."

Applying § 522(d)(1) to this case, the Court finds that as of the petition date, the Debtors used their Cheboygan property as a "residence" within the meaning of § 522(d)(1).

For the reasons stated above, the Court concludes that the Trustee has failed to satisfy his burden of proving that the Debtors' claims of exemption in the Cheboygan Property is not properly claimed. The Debtors' claimed exemptions will be allowed.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order overruling the Trustee's objection to exemptions, and allowing each Debtor's § 522(d)(1) exemption in the Cheboygan Property.

**Signed on August 31, 2012**                    **/s/ Thomas J. Tucker**
                                                 **Thomas J. Tucker**
                                                 **United States Bankruptcy Judge**

18